RECEIVED
DEC 2 9 2005

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **PATRICK LEJEUNE** | **CIVIL ACTION NO. 05-0026** |
| VS. | JUDGE HAIK |
| **JO ANNE BARNHART, Commissioner**<br>Social Security Administration | **MAGISTRATE JUDGE METHVIN** |

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **REVERSED** and the case be **REMANDED**.

### *Background*

Born on October 14, 1951, Patrick Lejeune ("Lejeune") is 54 years old. Lejeune completed the twelfth grade and worked in the past as a maintenance supervisor at a rice mill. On May 31, 2002, Lejeune applied for disability benefits alleging that he became disabled on August 16, 2000, when he was involved in an on-the-job accident in which he broke his right femur and which resulted in chronic hip and leg pain, fatigue, and depression.[1] Lejeune's application was denied on initial review, and administrative hearings were held on December 17, 2003 and June 22, 2004.[2] In an opinion dated July 22, 2004, the ALJ determined that Lejeune is not disabled because he is capable of performing jobs that exist in significant numbers in the economy.[3] The Appeals Council denied review and Lejeune timely filed this appeal.

---

[1] Tr. 68-70.

[2] Tr. 22-34, 267-282.

[3] Tr. 13-20.

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

## *Procedure for Analysis of Impairments and the ALJ's Findings*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

When a mental disability claim is made, the Commissioner utilizes a corollary sequential procedure for determining the merits of the claim. Essentially, this procedure substitutes specialized rules at Step 2 for determining whether a mental impairment is severe, and also provides detailed guidelines for making the Step 3 determination as to whether the mental impairment meets or exceeds the Listings. The Regulations require:

> [T]he ALJ to identify specifically the claimant's mental impairments, rate the degree of functional limitation resulting from each in four broad functional areas, and determine the severity of each impairment. Furthermore, § 404.1520a(e) provides that the ALJ must document his application of this technique to the claimant's mental impairments.

Satterwhite v. Barnhart, 44 Fed.Appx. 652 (5th Cir. 2002) (unpublished).[4]

---

[4] For a succinct summary of the current law, see Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004):

1. The ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether he or she has a medically determinable mental impairment.
2. If a medically determinable mental impairment is found, the ALJ must then rate the degree of functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) persistence or pace of concentration; and (4) episodes of decompensation. See C.F.R. §404.1520a(c)(3).
3. When a severe mental impairment is found, the Commissioner determines whether the impairment meets or exceeds the requirements of the Listings.
4. When the severe mental impairment does not meet Listing requirements, the Commissioner then assesses the claimant's residual functional capacity.

The procedure states that if the degree of limitation in the first three functional areas is "none" or "mild," and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe, *unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities.* Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(1).

the right hip."[9] Lejeune continued treatment with Dr. Holland and underwent physical therapy.[10] A notation by Dr. Holland dated January 17, 2001 stated that Lejeune was doing "great."[11]

On December 18, 2000, Dr. Kenneth Odinet, a plastic surgeon, performed an irrigation and debridement of a hematoma on Lejeune's left hip, as well as an excision of the bursa of the left hip and thigh.[12] On December 28, 2000, Dr. Odinet found that Lejeune was doing very well and released him to return on an as-needed basis.[13]

On February 19, 2001, Dr. Holland reported that Lejeune's left thigh hematoma looked good and he had satisfactory range of motion of his hips. Lejeune was therefore released to return to work.[14]

On April 11, 2001 Dr. Holland stated:

Patrick is frustrated because he is not able to return to his regular work duties. There is no light duty available according to him. I do not believe he will be able to return to his regular job. He needs vocational rehab for placement in a medium work duty status position. He is unable to work his regular job at this time.[15]

On September 19, 2001, Dr. Holland noted that Lejeune had post-traumatic depression and deconditioning.[16] Dr. Holland concluded that Lejeune had reached maximum medical

---

[9] Tr. 158.

[10] Tr. 216, 219.

[11] Tr. 216.

[12] Tr. 121.

[13] Tr. 119.

[14] Tr. 214.

[15] Tr. 213.

[16] Tr. 206.

improvement and that he could return to light work. On June 23, 2002, Dr. Holland sent a letter to Lejeune's attorney, noting that Lejeune was seen for the last time on May 8, 2002, and that he was physically capable of performing light work, with his primary limitations being related to stress.[17]

On August 15, 2002, at the request of Disability Determination Services ("DDS"), an x-ray was performed of Lejeune's right femur.[18] Dr. J.J. Laborde, a radiologist, found that there was a normal union of the previous fracture of the right femur. On August 27, 2002, DDS medical consultant, Dr. Michael Halphen, a pediatrician, completed a Physical Residual Functional Capacity Assessment.[19] Dr. Halphen found that Hernandez could occasionally lift 20 pounds, frequently lift 10 pounds, and could occasionally climb, balance, stoop, kneel, and crawl.[20]

*Mental impairments*: On December 6, 2000, Dr. Holland referred Lejeune to Dr. Kevin Young, a psychiatrist, for treatment of acute depression.[21] Dr. Young examined Lejeune on December 14, 2000.[22] Lejeune had difficulty talking about the accident and was embarrassed by his inability to cope with these feelings.[23] He was sad and tearful. His insight

---

[17] Tr. 204.

[18] Tr. 225.

[19] Tr. 227-234.

[20] Tr. 229.

[21] Tr. 218.

[22] Tr. 182-185.

[23] Tr. 185.

was fair and judgment was good. Dr. Young diagnosed major depressive disorder, single episode, severe, and chronic post traumatic stress disorder ("PTSD").

On January 4, 2001, Lejeune was prescribed Paxil for depression and anxiety associated with PTSD.[24] Lejeune continued monthly visits with Dr. Young until May 2, 2001.[25] After the May 2, 2001 visit, Lejeune's next examination was in June, 2002, when it was noted that his depression was mild and the symptoms of PTSD were improving.[26] Lejeune was released to return on an as-needed basis. Lejeune returned to Dr. Young on April 8, 2003 and it was noted that Lejeune still had preoccupation with the accident.[27] Lejeune was prescribed Effexor XR for his depression. On October, 18, 2003, it was noted that Lejeune's response to Effexor XR was fair.[28]

On September 17, 2002, the Social Security Administration ("SSA") had Joseph Kahler, Ph.D., a non-examining medical consultant, conduct a Psychiatric Review Technique ("PRT") and Mental Residual Functional Capacity Assessment.[29] The examiner concluded that Lejeune had mild restrictions of activities of daily living and maintaining concentration, persistence or pace; and moderate difficulties in maintaining social functioning.[30] Regarding his residual functional capacity, the examiner concluded that Lejeune had moderate limitations in his ability

---

[24] Tr. 180-182.

[25] Tr. 176-181.

[26] Tr. 177.

[27] Tr.

[28] Tr. 255.

[29] Tr. 236-251.

[30] Tr. 249.

to maintain attention and concentration for extended periods, ability to accept instructions and respond appropriately to criticism from supervisors, ability to complete a normal workday and workweek, and ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes.[31]

On March 15, 2004, at the request of DDS, Lejeune underwent a consultative psychological evaluation by Alfred Buxton, Ph.D, a clinical psychologist.[32] Dr. Buxton noted that Lejeune's intellect was normal, he reported episodes of passive suicidal ideation, denied poor self-esteem, and had frequent reflective crying spells. Dr. Buxton diagnosed Lejeune with "Dysthymic Disorder, with degree of impairment moderate to moderately severe and prognosis fair." Dr. Buxton concluded that it is unlikely that Lejeune would be able to maintain employment for a protracted period of time secondary to the negative impact of the dysthymic disorder and chronic pain and that he would not deal well with the frustration and stress that he would encounter in the job setting and one would see exacerbation in the overall symptomology.[33] Dr. Buxton found that Lejeune had marked limitations in his ability to carry our detailed instructions, respond appropriately to work pressures in a usual work setting and respond appropriately to changes in a routine work setting.

---

[31] Tr. 236-238.

[32] Tr. 258-260.

[33] Tr. 280.

## *Findings and Conclusion*

A review of the record shows that Lejeune's treating physician, Dr. Holland, found that Lejeune could perform the physical demands of light work and the DDS medical expert concluded that he should only occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Young, Lejeune's treating psychiatrist, did not note any restrictions on Lejeune's capabilities to perform the mental demands of work, however, Dr. Buxton found that Lejeune had limitations in his ability to carry out detailed instruction and to respond appropriately to work pressures and changes in a routine work setting, and that Lejeune could not maintain employment. After analyzing this evidence, the ALJ concluded that Lejeune could perform light work with the following limitations: occasional climbing, balancing, stooping, kneeling, crouching, and crawling; he has marked limitations in his ability to carry out detailed instructions, the ability to respond appropriately to work pressures in a usual work setting, and the ability to respond appropriately to changes in a routine work setting.[34] With this residual functional capacity assessment, the ALJ turned to the vocational expert who testified that Lejeune could perform the work of a gate guard, meter reader, and cashier/checker.[35]

Lejeune maintains that substantial evidence does not support the ALJ's determination because the ALJ discounted his allegations of pain and incorrectly discounted the reports of Drs. Young and Buxton.

The ALJ is entitled to determine the credibility of the examining physicians and medical experts and to weigh their opinions accordingly. Greenspan v. Shalala, 38 F.3d 232, 237 (5th

---

[34] Tr. 17, 19.

[35] Tr. 30.

Cir. 1994). The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). Further, the ultimate issue of disability is reserved to the Commissioner. Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990). The Fifth Circuit has held that pain, in and of itself, can be a disabling condition, but only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir.1991). The ALJ has discretion to determine the disabling nature of subjective complaints of pain, "at least where the medical evidence is inconclusive." Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987). The ALJ's determination in this regard is entitled to considerable deference. Id. However, if uncontroverted medical evidence reveals a basis for the subjective complaints of pain, the "ALJ's unfavorable credibility evaluation of a claimant's complaints of pain will not be upheld on judicial review . . . at least where the ALJ does not on an articulated basis weigh the objective medical evidence in assigning reasons for discrediting the claimant's subjective complaints of pain." Cook v. Heckler, 750 F.2d at 395.

Here, the ALJ's residual functional capacity assessment includes every postural limitation imposed by the physicians of record, and therefore, the ALJ's residual functional capacity assessment as it relates to Lejeune's physical limitations is supported by substantial evidence of record. The opinion of Dr. Holland that Lejeune can perform light work also supports the ALJ's determination that Lejeune's pain is not in itself disabling.

Thus, the issue is whether the ALJ's assessment of Lejeune's mental residual functional capacity is supported by the evidence. Lejeune maintains that the psychological evidence shows

that he would have difficulty competing in the workforce.[36] In order to be capable of engaging in substantial gainful activity, a person must have a realistic chance of both obtaining as well as holding a job in a realistic work setting:

> A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time.

Singletary v. Bowen, 798 F.2d 818, 822 (5th Cir.1986) (addressing mental impairments).

> In [Wingo v. Bowen, 852 F.2d 827 (5th Cir.1988)], this Court held that a determination that a person is capable of engaging in substantial gainful activity depends on a finding not only that the individual has some chance of being hired, but also, that, taking account of the individual's exertional and non-exertional limitations, the individual has a reasonable chance, "once hired, of keeping the job." *Id.* at 831. We noted that "[a] claimant capable of performing sedentary or light work under the guidelines must have the ability to perform the required physical acts day in and day out in the sometimes competitive and stressful conditions in which all people work in the real world." *Id.* (*citing* Allred v. Heckler, 729 F.2d 529, 533 (8th Cir.1984)).

Watson v. Barnhart, 288 F.3d 212 (5th Cir. 2002) (addressing physical impairments).[37]

"Usually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment." Frank v. Barnhart, 326 F.3d 618, 619 (5th Cir. 2003); *see also* Perez v. Barnhart, 415 F.3d 457 (5th Cir. 2005). However, when an impairment is of such a nature that the ability of

---

[36] Rec. Doc. 8 at p. 6.

[37] The Fifth Circuit has explained Watson:
At bottom, Watson holds that in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time. An ALJ may explore this factual predicate in connection with the claimant's physical diagnosis as well as in the ability-to-work determination.

the claimant to hold a job is an issue, separate consideration of whether the claimant is capable of maintaining employment is required. Id.

The ALJ included the following mental limitations imposed by the psychologists: inability to carry out detailed instructions; respond appropriately to work pressures; and respond appropriately to changes in a routine work setting. The lone limitation of record which is not included in the ALJ's residual functional capacity assessment is Dr. Buxton's conclusion that Lejeune would not be able to maintain employment.

Since Dr. Buxton concluded that maintaining employment is an issue for Lejeune, the ALJ should have addressed Lejeune's ability to maintain employment. The ALJ accepted the limitations identified by Dr. Buxton, yet he did not address Dr. Buxton's conclusion that it is unlikely that Lejeune would be able to maintain employment for a protracted period of time.[38] The undersigned concludes that the ALJ should have given specific reasons for discounting Dr. Buxton's opinion regarding Lejeune's ability to maintain employment. Moreover, the ALJ should have re-contacted Dr. Young, Lejeune's treating psychiatrist, to obtain his opinion regarding whether Lejeune's mental impairments limit his ability to maintain employment.[39]

Considering that the ALJ did not address whether Lejeune could maintain employment, and additional information regarding this issue is needed, the undersigned concludes that remand is appropriate in this matter. See Ferguson v. Schweiker, 641 F.2d 243, 250, n. 8 (5th Cir.1981)

---

[38] Tr. 280.

[39] Title 20 C.F.R. § 404.1512(e) requires the ALJ to recontact medical sources when their opinions do not provide sufficient information for the ALJ to determine disability status.

## *Conclusion*

The undersigned finds that substantial evidence of record supports the ALJ's decision. Accordingly, it is **RECOMMENDED** that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further proceedings, including an assessment by the ALJ of Lejeune's ability to maintain employment considering his mental and physical impairments.

Any judgment entered herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, Richard v. Sullivan, 955 F.2d 354 (5th Cir. 1992) and Shalala v. Schaefer, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See**

**Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana on ___December 25___, 2005.

COPY SENT
DATE 12-29-05
BY CG
TO MEM
RTH/gb

_____
Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)